No. 20-36052

---

# United States Court of Appeals for the Ninth Circuit

---

LEOBARDO MORENO GALVEZ, *et al.*,

*Plaintiffs-Appellees,*

v.

TRACY RENAUD, *et al.*,

*Defendants-Appellants.*

---

---

**BRIEF OF AMICI CURIAE CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), DIOCESAN MIGRANT & REFUGEE SERVICES, INC., THE DOOR, FLORENCE IMMIGRANT & REFUGEE RIGHTS PROJECT, IMMIGRANT JUSTICE CORPS, KIDS IN NEED OF DEFENSE (KIND), LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA, THE LEGAL AID SOCIETY, NEW JERSEY CONSORTIUM FOR IMMIGRANT CHILDREN, POLITICAL ASYLUM/ IMMIGRATION REPRESENTATION PROJECT (PAIR), PUBLIC COUNSEL, SAFE PASSAGE PROJECT, AND YOUNG CENTER FOR IMMIGRANT CHILDREN'S RIGHTS IN SUPPORT OF AFFIRMANCE AND PLAINTIFFS-APPELLEES**

---

Catherine Weiss
Tracy Buffer
Amanda K. Cipriano
Maxine Peskens
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Fax: (973) 597-2400
cweiss@lowenstein.com
tbuffer@lowenstein.com
acipriano@lowenstein.com
mpeskens@lowenstein.com

## CORPORATE DISCLOSURE STATEMENT
## (Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A))

Amici Curiae Catholic Legal Immigration Network, Inc. (CLINIC), Diocesan Migrant & Refugee Services, Inc., The Door, Florence Immigrant & Refugee Rights Project, Immigrant Justice Corps, Kids in Need of Defense (KIND), Lawyers' Committee for Civil Rights of the San Francisco Bay Area, The Legal Aid Society, Political Asylum/Immigration Representation Project (PAIR), Public Counsel, Safe Passage Project, and Young Center for Immigrant Children's Rights (collectively, "Nonprofit Corporation Amici") state that each is a nonprofit corporation with no parent corporation, and no publicly held corporation owns 10% or more of its stock.

The New Jersey Consortium for Immigrant Children ("Non-Corporate Amicus," and, with the Nonprofit Corporation Amici, "Amici") states that it is not yet a corporate entity but is fiscally sponsored by the nonprofit Community Foundation of New Jersey. The Non-Corporate Amicus has no parent company, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................iii

IDENTITY AND INTEREST OF AMICI CURIAE ................................ 1

SUMMARY OF ARGUMENT ................................................................ 7

ARGUMENT ........................................................................................ 9

I. The District Court Correctly Found That USCIS
Continues To Delay the Adjudication of SIJ Petitions
Beyond the 180-Day Statutory Deadline. ............................... 9

II. The District Court Correctly Found That SIJ Petitioners
Suffer Irreparable Harm When USCIS Delays
Adjudication Beyond the Statutory Deadline. ...................... 12

    A. Delayed adjudication causes irreparable harm by
    postponing protection from removal. ............................ 12

        1. SIJ status confers legal protection from
        removal. ................................................................. 13

        2. SIJ status increases the likelihood that
        removal proceedings will be terminated,
        dismissed, or administratively closed .................. 18

        3. Delayed protection from removal causes
        irreparable harm. .................................................. 22

    B. Delayed adjudication causes irreparable harm by
    postponing access to greater stability and other
    benefits associated with SIJ status. ............................ 26

        1. SIJ status opens a pathway to LPR status
        and citizenship. .................................................... 26

        2. SIJ status gives some beneficiaries access to
        legal work authorization in the United
        States. ................................................................... 28

        3. SIJ status entitles some beneficiaries to
        educational and social welfare benefits. ............... 31

    C.    Delayed adjudication causes irreparable harm by
          impeding release from detention. .................................. 32

CONCLUSION ........................................................................ 34

CERTIFICATE OF COMPLIANCE ....................................... 35

CERTIFICATE OF SERVICE ................................................ 36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ariz. Dream Act Coal. v. Brewer,*
　757 F.3d 1053 (9th Cir. 2014) ............................................................ 30

*Beno v. Shalala,*
　30 F.3d 1057 (9th Cir. 1994) .............................................................. 32

*C.J.L.G. v. Barr,*
　923 F.3d 622 (9th Cir. 2019) .................................................. 13, 16, 26

*Chalk v. U.S. Dist. Ct. Cent. Dist. Cal.,*
　840 F.2d 701 (9th Cir. 1988) .............................................................. 25

*Diaz-Calderon v. Barr,*
　No. 2:20-cv-11235, 2020 WL 5645191 (E.D. Mich. Sept. 22,
　2020) (granting temporary restraining order and
　preliminary injunction), No. 2:20-cv-11235-TGB, 2020 WL
　6585536 (E.D. Mich. Nov. 10, 2020) (granting habeas
　corpus and denying motion to dismiss), *appeal filed*, No.
　20-2159 (6th Cir. Nov. 25, 2020) .................................................. 23, 32

*E.M.C.N. v. Garland,*
　No. 21-1186 (3d Cir. July 2, 2021) ............................................... 13–14

*Edmo v. Corizon,*
　935 F.3d 757 (9th Cir. 2019) .............................................................. 25

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.,*
　630 F.3d 1153 (9th Cir. 2011) ............................................................ 30

*Garcia v. Holder,*
　659 F.3d 1261 (9th Cir. 2011) .......................................... 13, 17, 25, 26

*Hernandez v. Sessions,*
　872 F.3d 976 (9th Cir. 2017) .............................................................. 33

*J.L. v. Cissna*,
341 F. Supp. 3d 1048 (N.D. Cal. 2018) ......................................... 23, 28

*Joshua M. v. Barr*, 439 F. Supp. 3d 632 (E.D. Va. 2020) .......... 17, 19, 23

*In re Avetisyan*,
25 I&N Dec. 688 (BIA 2012) ....................................................... 21, 33

*In re Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018) .................................... 21

*In re Cruz-Valdez*,
28 I&N Dec. 326 (A.G. 2021) ............................................................ 21

*In re Yewondwosen*, Interim Dec. No. 3327 (BIA 1997),
https://www.justice.gov/sites/default/files/eoir/legacy/2014/
07/25/3327.pdf ................................................................................ 20–21

*Moreno Galvez v. Cuccinelli*,
492 F. Supp. 3d 1169 (W.D. Wash. 2020) ................................. *passim*

*Ms. L. v. ICE*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................. 23

*Osorio-Martinez v. Att'y Gen. U.S.*,
893 F.3d 153 (3d Cir. 2018) ....................................... 13, 17, 23, 26, 27

*Primero Garcia v. Barr*,
No. 20-cv-01389-NC, 2020 WL 1139660 (N.D. Cal. Mar. 9,
2020) ......................................................................................... 19, 23

*Roe v. Anderson*,
134 F.3d 1400 (9th Cir. 1998) ........................................................... 32

*Texas v. United States*,
No. 21-40618 (5th Cir. Sept. 15, 2021) ............................................. 20

*United States v. Lopez*,
998 F.3d 431 (9th Cir. 2021) ....................................................... 17–18

*Washington v. Trump*,
847 F.3d 1151 (9th Cir. 2017) ..................................................... 22–23

*Yates v. United States*,
    574 U.S. 528 (2015) ..................................................................... 18

STATUTES

8 U.S.C. § 1153(b)(4) ........................................................................ 15

8 U.S.C. § 1182 .......................................................................... 14, 15

8 U.S.C. § 1227 ................................................................................ 14

8 U.S.C. § 1232(d) ................................................................. 18, 25, 31

8 U.S.C. § 1255(h) ................................................................. 14, 15, 26

8 U.S.C. § 1357(h) ........................................................................... 17

8 U.S.C. § 1522(d) ........................................................................... 31

REGULATIONS

8 C.F.R. § 245.1(e)(3) ...................................................................... 14

8 C.F.R. § 1003.19 ........................................................................... 33

8 C.F.R. § 1240.11(a)(2) .................................................................. 16

8 C.F.R. § 1245.1 ....................................................................... 15, 16

8 C.F.R. § 1245.2(a)(1)(i) ................................................................. 29

OTHER AUTHORITIES

Annette Bernhardt et al., *Broken Laws, Unprotected
    Workers: Violations of Employment and Labor Laws in
    America's Cities*, Nat'l Emp. L. Project (Sept. 2009),
    https://s27147.pcdn.co/wp-
    content/uploads/2015/03/BrokenLawsReport2009.pdf ...................... 30

Andrew R. Calderón, *These Young People Were Told They Could Stay in the U.S.: They Might Get Deported Anyway*, The Marshall Project (Jan. 28, 2021), https://www.themarshallproject.org/2021/01/28/these-young-people-were-told-they-could-stay-in-the-u-s-they-might-get-deported-anyway ............................................................... 29

Deborah S. Gonzalez, *Sky Is the Limit: Protecting Unaccompanied Minors by Not Subjecting Them to Numerical Limitations*, 49 St. Mary's L.J. 555 (2018) ...................... 14

Raúl Hinojosa-Ojeda, *The Economic Benefits of Comprehensive Immigration Reform*, 32 Cato J. 175 (Winter 2012), http://www.knowyourvisa.com/pdf/the_economic_benefits_of_cir.pdf .............................................................................. 30

ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Aug. 10, 2021), https://www.ice.gov/doclib/news/releases/2021/11005.3.pdf ........ 19, 33

Kavel Joseph *et al.*, *Special Immigrant Juvenile Status Legislative History* (Dec. 19, 2017), http://niwaplibrary.wcl.american.edu/wp-content/uploads/Appendix-B-SIJS-Legislative-History.pdf .............. 14

Sherrie A. Kossoudji, *Back to the Future: The Impact of Legalization Then and Now*, Immigr. Pol'y Ctr. and Am. Immigr. Council (Jan. 2013), https://www.americanimmigrationcouncil.org/sites/default/files/research/back_to_the_future.pdf ................................................ 30

Sherrie A. Kossoudji & Deborah A. Cobb-Clark, *Coming out of the Shadows: Learning about Legal Status and Wages from the Legalized Population*, 20 J. of Lab. Econ. 598 (July 2002) ........................................................................ 30

Memorandum from John D. Trasviña to All OPLA Attorneys
(May 27, 2021),
https://www.ice.gov/doclib/about/offices/opla/OPLA-
immigration-enforcement_interim-guidance.pdf ............. 19–20, 20, 33

Nat'l Conf. of State Legis., *Tuition Benefits for Immigrants*
(Mar. 1, 2021),
https://www.ncsl.org/research/immigration/tuition-
benefits-for-immigrants.aspx ....................................... 28–29

N.Y. Off. of Temp. and Disability Assistance, *Non-Citizens
Who Are Special Immigrant Juveniles (SIJs) Are
Recognized as Permanently Residing Under Color of Law
(PRUCOL) for Safety Net Assistance (SNA) Eligibility*
(Aug. 18, 2021),
https://otda.ny.gov/policy/gis/2021/21DC059.pdf ............................... 31

Manuel Paris, Jr., *et al.*, *Vulnerable but Not Broken:
Psychosocial Challenges and Resilience Pathways Among
Unaccompanied Children from Central America* (2018),
https://www.apa.org/advocacy/immigration/vulnerable.pdf ........ 24–25

S.F. Hum. Servs. Agency, *CalFresh for Immigrants:
Frequently Asked Questions*,
https://www.sfhsa.org/services/health-
food/calfresh/calfresh-immigrants-frequently-asked-
questions ...................................................................... 31

U.S. Dep't of State, Bureau of Consular Affs., *Visa Bulletin
for October 2021*,
https://travel.state.gov/content/travel/en/legal/visa-
law0/visa-bulletin/2022/visa-bulletin-for-october-
2021.html ..................................................................... 15

USCIS, *Historical Nat'l Median Processing Time (in Months)
for All USCIS Offs. for Select Forms by Fiscal Year*,
https://egov.uscis.gov/processing-times/historic-pt ........................... 11

USCIS, *Number of I 360 Petitions for Special Immigrant with a Classification of Special Immigrant Juvenile (SIJ) by Fiscal Year, Quarter and Case Status, Fiscal Years 2010–2021*, https://www.uscis.gov/sites/default/files/document/data/I360_sij_performancedata_fy2021_qtr3.pdf ................................... 10, 11

USCIS, *Question and Answer Session, Special Immigrant Juvenile (SIJ) Policy Clarifications Engagement* (Dec. 10, 2019), https://www.uscis.gov/sites/default/files/document/questions-and-answers/Question_and_Answer_Session_from_Special_Immigrant_Juvenile_SIJ_Policy_Clarifications_Engagement.pdf ................................................................................ 11–12

USCIS, *Rights and Responsibilities of a Green Card Holder*, https://www.uscis.gov/green-card/after-we-grant-your-green-card/rights-and-responsibilities-of-a-green-card-holder-permanent-resident ........................................... 27–28

USCIS, *Welcome to the United States: A Guide for New Immigrants* (Sept. 2015), https://www.uscis.gov/sites/default/files/document/guides/M-618.pdf ............................................................. 28

## IDENTITY AND INTEREST OF AMICI CURIAE

Amici are nonprofit legal services and child advocacy organizations that represent immigrant children, supervise pro bono volunteers representing immigrant children, advocate to promote the best interests of immigrant children, or support practitioners of immigration law. All Amici represent or advocate on behalf of children seeking Special Immigrant Juvenile ("SIJ") status. Amici share a profound interest in the fair and legal treatment of young immigrants in this position.[1]

Having secured the consent of both Plaintiffs-Appellees and Defendants-Appellants, Amici file this brief to assist the Court in understanding the irreparable harms young immigrants face when the Government delays the adjudication of their SIJ petitions beyond the statutory deadline.

**Catholic Legal Immigration Network, Inc. ("CLINIC")** is a national nonprofit organization and the largest network of nonprofit immigration programs in the nation, with more than 400 affiliates in the

---

[1] No party's counsel authored any part of this brief. No entity other than Amici and their counsel made a monetary contribution to fund this brief's preparation or submission.

U.S. that collectively serve hundreds of thousands of low-income immigrants each year. CLINIC's work derives from Catholic social teaching to promote the dignity and protect the rights of immigrants. CLINIC advocates for immigrant children through litigation; comments to proposed regulations; and the provision of technical assistance, mentorship, practice advisories, e-learning, and in-person trainings to the children's legal representatives. CLINIC supports practitioners across the nation in representing children in SIJ petitions, SIJ-based adjustment of status applications, and removal proceedings.

**Diocesan Migrant & Refugee Services, Inc. ("DMRS")**, based in El Paso, is the largest provider of free and low-cost immigration legal services in West Texas and New Mexico. DMRS provides comprehensive immigration legal services and has assisted more than 12,000 unaccompanied immigrant children since 2014 in El Paso area shelters. DMRS regularly represents unaccompanied immigrant children in applying for SIJ status.

**The Door** provides comprehensive youth development services in the New York City area. Among other services, The Door represents young people in immigration matters, including in applying for SIJ

status and other forms of humanitarian relief. One of The Door's core missions is to obtain lawful immigration status and a pathway to permanent residency and citizenship for young immigrants in New York City and the surrounding areas.

**Florence Immigrant & Refugee Rights Project ("Florence Project")** provides free legal and social services to detained men, women, and children facing removal proceedings in Arizona. In 2019, approximately 10,000 detained people received a Florence Project orientation on immigration law and procedure, around half of whom were unaccompanied minors. The Florence Project represents hundreds of children and youth in removal proceedings in Arizona who have been abandoned, abused, or neglected and have applied for SIJ status.

**Immigrant Justice Corps ("IJC")** is the country's only fellowship program wholly dedicated to increasing access to counsel for immigrants facing the threat of deportation or seeking lawful status or citizenship. IJC identifies promising young lawyers and advocates, places them at nonprofit organizations, and supports them as they provide direct legal assistance to low-income immigrants. IJC fellows

represent large numbers of children and young people who have sought SIJ status, many of whom are in removal proceedings.

**Kids in Need of Defense ("KIND")** is a national nonprofit organization dedicated to providing free legal representation to immigrant children who are unaccompanied by or separated from a parent or legal guardian, and who face removal proceedings in immigration court. Since 2009, KIND has received referrals for more than 21,000 children from 77 countries. Through its ten field offices and in partnership with more than 650 law firms, corporations, law schools, and bar associations, KIND has assisted thousands of children in pursuing SIJ status. KIND also advocates for laws, policies, and practices to improve the protection of unaccompanied children.

The **Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCR")** is a nonprofit organization that combines direct legal services, policy advocacy, and impact litigation to advance the rights of low-income immigrants, refugees, and communities of color. LCCR uses all of these tools to protect the rights of abandoned, abused, and neglected youth who seek SIJ status and other forms of humanitarian immigration relief.

The **Legal Aid Society** is the oldest and largest program in the nation providing direct legal services to low-income families and individuals. The Legal Aid Society maintains an Immigration Law Unit ("ILU"), which is a recognized leader in the delivery of free, comprehensive, high-caliber legal services to low-income immigrants in New York City and surrounding counties. Through both direct services and class action litigation, ILU has represented hundreds of vulnerable immigrant youth, many of whom are subject to removal proceedings and qualify for SIJ status.

The **New Jersey Consortium for Immigrant Children ("Consortium")** is a statewide collaboration of advocates for children from nonprofit organizations, law schools, and law firms. Consortium members provide representation to undocumented immigrant children in removal proceedings, particularly children and youth who have been abused, neglected, or abandoned and who are eligible for SIJ status, as well as for other forms of humanitarian relief.

The **Political Asylum/Immigration Representation Project ("PAIR")** is a nonprofit organization in Boston and the leading provider of pro bono legal services to indigent asylum-seekers and immigrants

detained in Massachusetts. A significant percentage of PAIR's clients are under the age of twenty-one; have been abused, abandoned, or neglected; and are seeking safety and legal protection in the United States in the form of SIJ status.

**Public Counsel**, based in Los Angeles, California, is the nation's largest nonprofit law firm specializing in delivering pro bono legal services through a model that leverages the talents of thousands of attorney and law student volunteers. Public Counsel's Immigrants' Rights Project provides legal representation to around 200 immigrant children at any time and has played an integral role in recent impact litigation on behalf of immigrant children seeking humanitarian relief.

**Safe Passage Project ("Safe Passage")** is a nonprofit legal services organization based in New York City and Long Island with a single mission: to ensure that no child faces the immigration process alone. With a staff of 40, and in collaboration with 550 attorney volunteers, Safe Passage represents more than 1,200 young people in the New York area. Considered a national expert on SIJ status, Safe Passage conducts legal trainings, mentors pro bono attorneys, advises lawmakers, and participates in litigation of national importance to immigrant youth.

The **Young Center for Immigrant Children's Rights ("Young Center")** has been appointed as the independent Child Advocate for thousands of particularly vulnerable children and runs Child Advocate programs in eight locations across the United States. In that capacity, the Young Center provides government officials with determinations on the best interests of each child, including those seeking SIJ status, considering his or her safety, expressed wishes, and rights to family, liberty, development, and identity. The Young Center also engages in policy initiatives to develop and promote standards for protecting the best interests of children while they are subject to decision-making by government officials.

## SUMMARY OF ARGUMENT

Congress created SIJ status more than thirty years ago to establish protection from removal and a pathway to permanent residency for certain immigrant children: those who cannot reunify with one or both of their parents because of abuse, neglect, abandonment, or some similar reason, and whose return to their country of origin would conflict with their best interests. If United States Citizenship and Immigration Services ("USCIS") approves a juvenile's SIJ petition, the juvenile may

rely on SIJ status to apply to become a lawful permanent resident ("LPR"), and federal law removes certain barriers that would otherwise stand in the way. After a SIJ beneficiary achieves permanent residency, he or she may seek the ultimate safe harbor of citizenship in due course. Delays in adjudicating SIJ petitions postpone or jeopardize permanent protection for young people who have known little stability in their lives and therefore need the speedy resolution that Congress guaranteed them by requiring USCIS to adjudicate all SIJ petitions within 180 days.

USCIS's own data and admissions confirm that it continues to postpone the adjudication of SIJ petitions past the 180-day statutory deadline. Delays were especially acute from Fiscal Year ("FY") 2017 to FY 2019. While USCIS made progress toward retiring the backlog in FY 2020, data from the first three quarters of FY 2021 show a growing number of petitions left pending.

Delays in the adjudication of SIJ petitions cause irreparable harm. Most significantly, such delays prolong the period in which young SIJ petitioners are subject to threatened or actual removal to their countries of origin, where they lack parental protection and often face violence. For some, delayed adjudication postpones their ability to apply for LPR

status and gain access to the many rights and protections associated with permanent residency. While awaiting SIJ adjudication, some petitioners also endure delays in their eligibility for legal work authorization and critical public benefits, such as federal refugee assistance. Those who are in immigration detention may endure longer confinement because their SIJ petitions remain unresolved. These consequences combine to compromise the futures of some SIJ petitioners to their lasting detriment.

To avoid the resulting irreparable harm, Amici urge the Court to affirm the decision of the District Court binding USCIS to adhere to the deadline Congress has set. Because the statutory deadline explicitly applies to all SIJ petitioners, Amici expect that the Government will comply with the deadline as to all and avoid simply shifting the burden of delay to juveniles who are not before this Court.

## **ARGUMENT**

## I. **THE DISTRICT COURT CORRECTLY FOUND THAT USCIS CONTINUES TO DELAY THE ADJUDICATION OF SIJ PETITIONS BEYOND THE 180-DAY STATUTORY DEADLINE.**

The District Court found that "the agency regularly delays adjudication of SIJ petitions well beyond the 180-day period." *Moreno*

*Galvez v. Cuccinelli*, 492 F. Supp. 3d 1169, 1181 (W.D. Wash. 2020). Far from being clearly erroneous, as the Government claims, Gov't Br. at 25–26, this finding is amply supported by USCIS's own data and admissions.

Below is a table from USCIS showing the numbers of SIJ filings and adjudications from FY 2010 (October 1, 2009, to September 30, 2010) through the third quarter FY 2021.

Number of I 360 Petitions for Special Immigrant with a Classification of Special Immigrant Juvenile (SIJ)
By Fiscal Year, Quarter and Case Status
Fiscal Years 2010-2021

U.S. Citizenship and Immigration Services

| Period | Petitions by Case Status | | | |
| | Special Immigrant Juvenile[1] | | | |
| | Petitions Received[2] | Approved[3] | Denied[4] | Pending[5] |
| --- | --- | --- | --- | --- |
| **Fiscal Year - Total** | | | | |
| 2010 | 1,646 | 1,591 | 107 | 1,294 |
| 2011 | 2,226 | 1,869 | 96 | 1,578 |
| 2012 | 2,969 | 2,724 | 124 | 1,680 |
| 2013 | 3,996 | 3,418 | 197 | 1,992 |
| 2014 | 5,815 | 4,581 | 233 | 2,223 |
| 2015 | 11,528 | 8,672 | 396 | 4,720 |
| 2016 | 19,574 | 14,977 | 611 | 8,594 |
| 2017 | 22,161 | 11,470 | 934 | 18,293 |
| 2018 | 21,917 | 4,710 | 1,654 | 33,791 |
| 2019 | 20,721 | 23,145 | 2,545 | 29,299 |
| 2020 | 18,711 | 39,745 | 1,737 | 8,011 |
| **Fiscal Year 2021 by Quarter** | | | | |
| Q1. October - December | 5,346 | 4,243 | 527 | 8,793 |
| Q2. January - March | 5,203 | 4,701 | 389 | 9,179 |
| Q3. April - June | 5,943 | 4,430 | 276 | 10,599 |
| Q4. July - September | | | | |
| Total | 16,492 | 13,374 | 1,192 | 10,599 |

Reference(s):
[1] Refers to foreign children in the United States who have been abused, abandoned, or neglected.
[2] The number of new petitions received and entered into a case-tracking system during the reporting period.
[3] The number of petitions approved during the reporting period.
[4] The number of petitions that were denied, terminated, or withdrawn during the reporting period.
[5] The number of petitions awaiting a decision as of the end of the reporting period.

Note(s):
1) Some applications approved, denied, or pending a decision may have been received in prior reporting periods.
2) The report reflects the most up-to-date estimate available at the time the database is queried.
3) Counts may differ from those reported in previous quarters due to system updates and post-adjudicative outcomes.
4) For a complete list of USCIS forms and descriptions, visit https://www.uscis.gov/forms.

Source:
Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
C3 Consolidated via SAS, queried 8/2021, TRK 7761.

This table[2] reveals that from FY 2017 through FY 2019, the timely adjudication rate slowed significantly, hitting a low-point in FY 2018 when nearly 34,000 petitions remained pending at year-end. In FY 2020, the agency made a real push to reduce the backlog. In the first three-quarters of FY 2021, however, the backlog appeared to be growing again, with 10,599 petitions pending at the end of June.

In December 2019, the agency published a Q&A document about SIJ status in which it acknowledged the statutory filing deadline but candidly admitted that "USCIS is currently processing SIJ petitions beyond the 180-day time due to several litigation related holds and the steady volume of SIJ petitions, consistent with its discretion over the pace of adjudication."[3] The Government's brief reiterates this admission

---

[2] Available at https://www.uscis.gov/sites/default/files/document/data/I360_sij_performancedata_fy2021_qtr3.pdf. This table is a better indicator of processing times for SIJ petitions than USCIS, *Historical Nat'l Median Processing Time (in Months) for All USCIS Offs. for Select Forms by Fiscal Year*, https://egov.uscis.gov/processing-times/historic-pt, because the latter document encompasses all I-360 petitions, including those filed by petitioners who are not seeking designation as Special Immigrant Juveniles.

[3] USCIS, *Question and Answer Session, Special Immigrant Juvenile (SIJ) Policy Clarifications Engagement* (Dec. 10, 2019), https://www.uscis.gov/sites/default/files/document/questions-and-

by arguing that strict enforcement of the 180-day deadline would cause "substantial hardship" because the agency is "often hamstrung by 'limited resources, competing court orders, [and] the increased number of annual SIJ petitions [it] receives . . . .'" Gov't Br. at 22 & n.3 (quoting Valverde Decl. (ER-109)). The Government thus concedes that it does not reliably and consistently meet the statutory deadline.

## II. The District Court Correctly Found That SIJ Petitioners Suffer Irreparable Harm When USCIS Delays Adjudication Beyond the Statutory Deadline.

In support of the permanent injunction it issued, the District Court found that USCIS's delay in adjudicating SIJ petitions causes Plaintiffs "irreparable harm insofar as they cannot access the benefits that go along with SIJ status." *Moreno Galvez*, 492 F. Supp. 3d at 1181. Again, this finding is amply supported in the record, by the facts, and in Amici's broad experience representing SIJ petitioners throughout the nation.

### A. Delayed adjudication causes irreparable harm by postponing protection from removal.

Securing SIJ status protects a young person from removal from the United States. Conversely, a delay in the grant of SIJ status leaves a

---

answers/Question_and_Answer_Session_from_Special_Immigrant_Juvenile_SIJ_Policy_Clarifications_Engagement.pdf.

juvenile unprotected. Prolonged exposure to actual or threatened removal imposes irreparable harm on young people.

### 1. SIJ status confers legal protection from removal.

Congress has protected SIJ beneficiaries from removal, creating a viable pathway to lawful permanent residency and ultimately, citizenship. In the words of this Court, the "special eligibility requirements" for SIJ status, and the benefits associated with this status, "show a congressional intent to assist a limited group of abused children *to remain safely in the country* with a means to apply for LPR status." *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (emphasis added); *accord C.J.L.G. v. Barr*, 923 F.3d 622, 626 (9th Cir. 2019) (en banc) ("Congress created SIJ status in 1990 to provide a path to lawful permanent residency for certain at-risk children."); *Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 168 (3d Cir. 2018).

The history of the SIJ statutory scheme evinces Congress's clear intent to keep beneficiaries safely in the United States.[4] Most pertinent

---

[4] For a thorough review of the legislative history, *see* Brief of Amici Curiae Catholic Legal Immigration Network, *et al.*, in *E.M.C.N. v. Garland*, No. 21-1186 (3d Cir. July 2, 2021), https://www.lowenstein.com/media/6934/emcn-v-garland-amicus-brief-

here, SIJ beneficiaries are exempt from certain common grounds of both deportability and inadmissibility, charges that might otherwise lead to orders of removal against SIJ-eligible youth. 8 U.S.C. § 1227(c) (providing that specified grounds of deportability under 8 U.S.C. § 1227(a) "shall not apply to a special immigrant [juvenile] based upon circumstances that existed before the date the alien was provided such special immigrant status"); 8 U.S.C. § 1255(h)(2) (providing that certain grounds of inadmissibility under 8 U.S.C. § 1182 "shall not apply" to SIJ beneficiaries seeking adjustment of status, and others may be waived at the request of the beneficiary); *see also* 8 C.F.R. § 245.1(e)(3). Because of these exemptions, SIJ beneficiaries are protected from removal, 8 U.S.C. § 1227(c), and permitted to adjust to LPR status whether or not they were admitted at a point of entry, carried valid travel documents, or are deemed likely to become a "public charge," among other grounds, 8 U.S.C. § 1255(h)(2)(A) (exempting SIJ beneficiaries from grounds of

---

7221.pdf; *see also* Kavel Joseph *et al.*, *Special Immigrant Juvenile Status Legislative History* (Dec. 19, 2017), http://niwaplibrary.wcl.american.edu/wp-content/uploads/Appendix-B-SIJS-Legislative-History.pdf; Deborah S. Gonzalez, *Sky Is the Limit: Protecting Unaccompanied Minors by Not Subjecting Them to Numerical Limitations*, 49 St. Mary's L.J. 555, 558–62 (2018).

inadmissibility at 8 U.S.C. § 1182(a)(4), (6)(A), and (7)(A), among others). In contrast, grounds related to certain criminal convictions and national security risks are not waived. *See* 8 U.S.C. § 1255(h)(2) (neither exempting SIJ beneficiaries from nor allowing them to seek waivers of grounds at 8 U.S.C. § 1182(a)(2), (3)).

The protections associated with SIJ status attach when a petition is granted. Many SIJ petitioners—including those from El Salvador, Guatemala, Honduras, and Mexico—are subject to a visa backlog, meaning that they may have to wait years before they are eligible for lawful permanent residency because the law limits the number of visas available per year and per country.[5] For them, the SIJ parole provision is especially important. Under this provision, SIJ beneficiaries "shall be deemed, for purposes of subsection (a) [pertaining to adjustment of status], *to have been paroled* into the United States." 8 U.S.C. § 1255(h)(1) (emphasis added); *see also* 8 C.F.R. § 1245.1(a). The tense

---

[5] *See* 8 U.S.C. § 1153(b)(4) (limiting the number of visas available); U.S. Dep't of State, Bureau of Consular Affs., *Visa Bulletin for October 2021* (showing delays in visa availability for immigrants from El Salvador, Guatemala, Honduras, and Mexico in the 4th employment-based category, which includes SIJ beneficiaries), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2022/visa-bulletin-for-october-2021.html.

matters. Congress did not say that SIJ beneficiaries will be deemed paroled into the country only once they become eligible to apply for LPR status. Instead, Congress granted SIJ beneficiaries the right to be treated, for the purpose of adjustment of status, as if they had been lawfully paroled into the country, at the latest upon approval of their SIJ petitions.

Relying on the parole provision, this Court, sitting en banc, has previously rejected the Government's argument that "SIJ status is not a form of relief from removal," holding that "[a] successful SIJ application plainly can lead to relief from removal." *C.J.L.G.*, 923 F.3d at 627 (citing 8 C.F.R. § 1245.1(a), (e)(2)(vi)(B)(3) (the regulatory provisions on SIJ parole)). The Court held in *C.J.L.G.* that immigration judges must inform juvenile respondents (including the respondent in that case, who was from Honduras and therefore subject to the visa backlog) of the possibility of SIJ status if they are "apparent[ly] eligibl[e]" for such relief, in accordance with 8 C.F.R. § 1240.11(a)(2). 923 F.3d at 627–28. This holding would be vitiated if the Government could turn around and remove a child *after* he or she had secured a SIJ approval and without any basis for removal other than those waived by law for SIJ

beneficiaries. Under this Court's precedents, therefore, SIJ beneficiaries have a right to "remain safely in the country," *Garcia v. Holder*, 659 F.3d at 1271, protected from removal even if they must wait to adjust status, *see also Osorio-Martinez*, 893 F.3d at 168; *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 678–79 (E.D. Va. 2020).

Other statutory provisions underscore Congress's intent that SIJ beneficiaries remain safe and present in the United States. For example, federal law provides that a SIJ petitioner "who has been battered, abused, neglected, or abandoned, shall not be compelled to contact the alleged abuser (or family member of the alleged abuser) at any stage of applying for special immigrant juvenile status." 8 U.S.C. § 1357(h). Congress cannot have meant to protect children from harmful contact with abusive or neglectful parents during the SIJ application process only to allow the Government to remove those same children after granting SIJ status, placing them again at risk of dependency on unfit parents and loss of the stability available to them in the United States. Canons of statutory interpretation disfavor such absurd results. *United States v. Lopez*, 998 F.3d 431, 438 (9th Cir. 2021) (reviewing the "absurdity canon" and noting its application "where it is quite impossible

that Congress could have intended the result") (emphasis and citation omitted).

Significantly, the Trafficking Victims Protection Reauthorization Act, the most recent federal statute amending the SIJ framework, titles the relevant subsection "*Permanent Protection* for Certain At-Risk Children," underscoring Congress's intent that SIJ status would confer protection from removal *permanently*. 8 U.S.C. § 1232(d) (emphasis added); *see also Yates v. United States*, 574 U.S. 528, 540 (2015) (recognizing that although statutory "headings are not commanding," they may provide important "cues" about congressional intent).

Each of these congressional actions reflects an unmistakable intent to permit SIJ beneficiaries to remain in the United States to pursue lawful permanent residency, unless the Government asserts and proves a basis for removal that is not subject to one of the SIJ statutory exemptions.

> ### 2. SIJ status increases the likelihood that removal proceedings will be terminated, dismissed, or administratively closed.

Despite the statutory protections outlined above, the Government has not recognized that the law protects SIJ beneficiaries from removal.

Indeed, the Government has advocated for and sometimes executed removal orders against SIJ beneficiaries, based on charges from which the law exempted them, while they were waiting for visas. *See, e.g.*, *Primero Garcia v. Barr*, No. 20-cv-01389-NC, 2020 WL 1139660 (N.D. Cal. Mar. 9, 2020); *Joshua M.*, 439 F. Supp. 3d 632. Even under the Government's flawed view of the law, however, USCIS's approval of a SIJ petition makes it far more likely that removal proceedings against a beneficiary will be terminated, dismissed, or administratively closed.

Recent guidance from the Government instructs immigration prosecutors not to seek the removal of SIJ beneficiaries in the ordinary course. *See, e.g.*, ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* § 5.4(b) (Aug. 10, 2021) ("If USCIS . . . approves any victim-based immigration benefit, including approved . . . SIJ petitions . . ., ICE should review the case for the exercise of prosecutorial discretion, however appropriate.")[6]; Memorandum from John D. Trasviña to All OPLA [Office of the Principal Legal Advisor] Attorneys 9 (May 27, 2021) [hereinafter "Trasviña Memo"] (advising attorneys responsible for prosecuting removal cases that the case of "a

---

[6] Available at https://www.ice.gov/doclib/news/releases/2021/11005.3.pdf.

child who appears prima facie eligible to pursue special immigrant juvenile status" will generally "merit dismissal in the absence of serious aggravating factors")[7]; *Texas v. United States*, No. 21-40618, slip op. at 12 (5th Cir. Sept. 15, 2021) (holding that immigration officials retain discretion to decide "who should be subject to arrest, detainers, and removal proceedings" and partially staying injunction that would have prevented implementation of immigration enforcement priorities underlying Trasviña Memo). In line with this guidance, immigration prosecutors in cases Amici are handling throughout the country have recently been willing to join motions to terminate or administratively close the removal proceedings of SIJ beneficiaries. Immigration courts are far more likely to grant such relief when the Government joins the motion. *See In re Yewondwosen*, Interim Dec. No. 3327 at 1026 (BIA 1997) ("We believe the parties have an important role to play in these

---

[7] Available at https://www.ice.gov/doclib/about/offices/opla/OPLA-immigration-enforcement_interim-guidance.pdf.

administrative proceedings, and that their agreement on an issue or proper course of action should, in most instances, be determinative.").[8]

Similarly, the Attorney General recently revived the discretion of the immigration courts to grant administrative closure in cases where the relevant factors favor such closure. *In re Cruz-Valdez*, 28 I&N Dec. 326, 329 (A.G. 2021) (overruling *In re Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018), and reviving standards under *In re Avetisyan*, 25 I&N Dec. 688 (BIA 2012)). Administrative closure "does not terminate or dismiss the case, but rather 'remove[s] a case from an Immigration Judge's active calendar or from the Board's docket.'" *Id.* at 326 (quoting *Avetisyan*, 25 I&N Dec. at 692). One key factor in a motion for administrative closure is "the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings." *Avestisyan*, 25 I&N Dec. at 696. Thus, the Board of Immigration Appeals has advised that it may be appropriate "to administratively close removal proceedings where an alien demonstrates that he or she is the beneficiary of an approved visa petition." *Id.* An approved SIJ petition is precisely

---

[8] Available at
https://www.justice.gov/sites/default/files/eoir/legacy/2014/07/25/3327.pdf.

that and creates a strong basis for an immigration court to grant administrative closure even over a potential objection from the Government.

Thus, a SIJ beneficiary may benefit from relief from removal proceedings even if the Government denies that a SIJ approval is itself a legal basis for termination of proceedings. Amici report that just being freed of periodic mandatory appearances in immigration court permits their SIJ beneficiary clients to focus on their education and move on with their lives.

### 3. Delayed protection from removal causes irreparable harm.

Delayed SIJ adjudication prolongs the period in which beneficiaries are not protected. For those actually subject to unlawful removal, the harm is both severe and indelible. They suffer the "loss of the relationships and support systems these vulnerable youth have cobbled together in this country," *Moreno Galvez*, 492 F. Supp. 3d at 1181, including the severance of their connections to the custodians or guardians with whom the state court has placed them. Such disruption of familial relationships constitutes irreparable harm. *See Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("When the Executive

Order was in effect, the States contend that the travel prohibitions harmed the States' university employees and students, separated families, and stranded the States' residents abroad. These are substantial injuries and even irreparable harms."); *Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1142–47 (S.D. Cal. 2018). In addition, young people may suffer violence or worse upon repatriation. *See, e.g.*, *Primero Garcia*, 2020 WL 1139660, at *4 (SIJ beneficiary showed "a strong likelihood that he will suffer irreparable harm" absent injunctive relief because he was "attacked twice" in his home country when illegally removed there); *Diaz-Calderon v. Barr*, No. 2:20-cv-11235-TGB, 2020 WL 6585536, *2 (E.D. Mich. Nov. 10, 2020) (granting habeas petition for SIJ beneficiary and noting that he was "beaten by gangs to the point where he required hospitalization" during his unlawful removal), *appeal filed*, No. 20-2159 (6th Cir. Nov. 25, 2020). Consequences like these cause irreversible injury. *Osorio-Martinez*, 893 F.3d at 179; *J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1068–70 (N.D. Cal. 2018); *Joshua M.*, 439 F. Supp. 3d at 680–81.

Those who avoid unlawful removal still suffer the significant harms associated with ongoing fear and uncertainty about their safety. Young people awaiting SIJ adjudication experience the "stress, devastation,

fear, and depression arising from the increased possibility that they will be placed in removal proceedings and/or deported before obtaining an SIJ designation." *Moreno Galvez*, 492 F. Supp. 3d at 1181. The record in this case confirms the mental health consequences for young people. *See* Wennerstrom Decl. ¶ 13 (describing challenging circumstances of several SIJ petitioner clients, including one who "reports continued depression, anxiety, and panic attacks and says that 'every night and every morning' his immigration uncertainty is 'stuck in his mind'"), ¶ 14 (SIJ petitioner clients "experienc[e] psychological, financial, educational, and vocational disruption for lack of a decision"), ECF No. 10. Leading studies underscore the deleterious effects on young people of delays in achieving secure immigration status. *See generally* Manuel Paris, Jr., *et al.*, *Vulnerable but Not Broken: Psychosocial Challenges and Resilience Pathways Among Unaccompanied Children from Central America* (2018) (reporting on research in the field); *id.* at 51 ("While many factors may influence unaccompanied children's integration and success in the U.S., legal status has been identified as the 'master status' due to its major

implications for adjustment and social mobility.") (citation omitted).[9]  As the District Court concluded, such harm is irreparable.  *Moreno Galvez*, 492 F. Supp. 3d at 1181–82; *see also Edmo v. Corizon*, 935 F.3d 757, 797–98 (9th Cir. 2019) ("It is no leap to conclude that Edmo's severe, ongoing psychological distress . . . constitute[s] irreparable harm."); *Chalk v. U.S. Dist. Ct. Cent. Dist. Cal.*, 840 F.2d 701, 709 (9th Cir. 1988) ("emotional stress, depression and reduced sense of well-being" constitute irreparable injury).

Indeed, it is partly for these reasons that Congress required expedited adjudication of SIJ petitions in the first place.  "That Congress has . . . mandated expeditious adjudication of SIJS applications may be viewed as a clarification by Congress that it does in fact desire extra protection for SIJS-eligible minors."  *Garcia v. Holder*, 659 F.3d at 1271.

This "extra protection," *id.*, should redound to the benefit of all SIJ beneficiaries.  The statute setting the 180-day deadline expressly applies to "*[a]ll* applications for special immigrant [juvenile] status," 8 U.S.C. § 1232(d)(2)  (emphasis  added).    Amici  therefore  expect  that  the

---

[9] Available at https://www.apa.org/advocacy/immigration/vulnerable.pdf.

Government will comply with whatever decision this Court renders as to all petitioners—certainly to all in the Ninth Circuit—thereby avoiding the harms the Government attributes to pitting some petitioners against others. Gov't Br. at 29–30.

## B. Delayed adjudication causes irreparable harm by postponing access to greater stability and other benefits associated with SIJ status.

SIJ status confers a "host of legal rights and protections." *Osorio-Martinez*, 893 F.3d at 161 n.7. Chief among these is a strong basis to apply for lawful permanent residency and ultimately citizenship. SIJ status also carries with it certain educational and social welfare benefits. The loss or postponement of these benefits constitutes irreparable harm.

### 1. SIJ status opens a pathway to LPR status and citizenship.

SIJ approval creates a clear pathway to lawful status and eventual citizenship. 8 U.S.C. § 1255(h); *Garcia v. Holder*, 659 F.3d at 1271; *C.J.L.G.*, 923 F.3d at 626. Given the harms caused by threatened or actual removal, and the challenges of living in the United States as an undocumented immigrant, the ability to travel this pathway is a critical benefit, bringing peace of mind even to those beneficiaries from El

Salvador, Guatemala, Honduras, or Mexico who must wait in line for a visa before applying for LPR status.

For SIJ petitioners from other countries, who are not subject to the visa backlog, the benefits of LPR status are more immediate. Those in this group who are not in removal proceedings may file for SIJ and LPR status simultaneously, but the LPR petition may only be adjudicated if and when the SIJ petition is granted. For this group, every day of delay in SIJ adjudication is a day of delay before they can qualify for lawful permanent residency. Delayed SIJ adjudication thus forces them to wait to achieve the permanent legal status, and concomitant family stability, that young survivors of child abuse, neglect, or abandonment especially need.

In addition to promoting their well-being, becoming an LPR at the earliest possible opportunity secures critical legal rights for young immigrants. A "lawful permanent resident is the quintessential example of an alien entitled to 'broad constitutional protections.'" *Osorio-Martinez*, 893 F.3d at 174 (citation omitted). Indeed, LPRs are "protected by all laws of the United States, [their] state of residence and local jurisdictions," including the antidiscrimination laws. USCIS, *Rights and*

*Responsibilities of a Green Card Holder*.[10]  Moreover, an LPR may travel in and out of the United States, use a green card as identification, rely on a green card to obtain a Social Security number and state-issued driver's license, and qualify for many public health and welfare benefits, among other things.  USCIS, *Welcome to the United States: A Guide for New Immigrants* 14, 57–73 (Sept. 2015).[11]  And eventually, an LPR may apply for citizenship, gaining full rights in the United States including the right to vote.  *Id.* at 100–07.  "The loss of these benefits by itself constitutes irreparable harm."  *J.L.*, 341 F. Supp. 3d at 1069.

### 2. SIJ status gives some beneficiaries access to legal work authorization in the United States.

Authorization to work legally in the United States is also vital for SIJ beneficiaries, many of whom are unable to afford higher education once they leave high school and have no choice but to go to work.[12]  Those

---

[10]  Available at https://www.uscis.gov/green-card/after-we-grant-your-green-card/rights-and-responsibilities-of-a-green-card-holder-permanent-resident.

[11] Available at https://www.uscis.gov/sites/default/files/document/guides/M-618.pdf.

[12] As of March 2021, most states did not allow undocumented immigrant students to pay the lower tuition rates available to "in-state" students. Nat'l Conf. of State Legis., *Tuition Benefits for Immigrants* (Mar. 1, 2021), https://www.ncsl.org/research/immigration/tuition-benefits-for-

fortunate SIJ petitioners who are not in removal proceedings and who are not subject to the visa backlog may qualify for work authorization when they file simultaneously for approval of their SIJ and LPR applications. Those less fortunate SIJ petitioners who are subject to the visa backlog will not qualify for work authorization until they are able to apply for LPR status.

Delays in SIJ adjudication do postpone eligibility for work authorization for one group, however—SIJ petitioners who are not subject to the visa backlog and who are in removal proceedings. Most of them may not file with USCIS to adjust status and obtain work authorization because the immigration court has "exclusive jurisdiction to adjudicate any application for adjustment of status" while they are in proceedings. 8 C.F.R. § 1245.2(a)(1)(i). They must wait for a SIJ approval before they can file for adjustment of status in the immigration court, and only then may USCIS grant them authorization to work legally in the United States. Delayed SIJ adjudication thus prolongs

immigrants.aspx; *see also* Andrew R. Calderón, *These Young People Were Told They Could Stay in the U.S.: They Might Get Deported Anyway*, The Marshall Project (Jan. 28, 2021), https://www.themarshallproject.org/2021/01/28/these-young-people-were-told-they-could-stay-in-the-u-s-they-might-get-deported-anyway.

their inability to work or consigns them to low-wage, dead-end jobs where they disproportionately suffer from labor exploitation.[13]  These harms are irreparable.  *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (holding that DACA recipients had shown likelihood of irreparable harm from state law denying them driver's licenses, which interfered with their ability to work, and concluding that "'loss of opportunity to pursue [Plaintiffs'] chosen profession[s]' constitutes irreparable harm" (quoting *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011))).

---

[13] *See generally, e.g.*, Sherrie A. Kossoudji, *Back to the Future: The Impact of Legalization Then and Now*, Immigr. Pol'y Ctr. and Am. Immigr. Council (Jan. 2013), https://www.americanimmigrationcouncil.org/sites/default/files/research/back_to_the_future.pdf; Raúl Hinojosa-Ojeda, *The Economic Benefits of Comprehensive Immigration Reform*, 32 Cato J. 175 (Winter 2012), http://www.knowyourvisa.com/pdf/the_economic_benefits_of_cir.pdf; Annette Bernhardt *et al.*, *Broken Laws, Unprotected Workers: Violations of Employment and Labor Laws in America's Cities*, Nat'l Emp. L. Project (Sept. 2009), https://s27147.pcdn.co/wp-content/uploads/2015/03/BrokenLawsReport2009.pdf; Sherrie A. Kossoudji & Deborah A. Cobb-Clark, *Coming out of the Shadows: Learning about Legal Status and Wages from the Legalized Population*, 20 J. of Lab. Econ. 598 (July 2002).

### 3. SIJ status entitles some beneficiaries to educational and social welfare benefits.

SIJ approval carries other important benefits for some beneficiaries. For example, some Special Immigrant Juveniles qualify for the Unaccompanied Minor Refugee Program. 8 U.S.C. §§ 1232(d)(4)(A), 1522(d). This program provides special education and child welfare services. 8 U.S.C. § 1522(d). Moreover, in some states, SIJ beneficiaries qualify for cash or nutritional assistance. *See, e.g.*, S.F. Hum. Servs. Agency, *CalFresh for Immigrants: Frequently Asked Questions* (noting in answer to Q1 that immigration parolees are eligible, presumably including SIJ parolees; noting in answer to Q7 that SIJ beneficiaries will not be barred from LPR status by virtue of receiving CalFresh assistance)[14]; N.Y. Off. of Temp. and Disability Assistance, *Non-Citizens Who Are Special Immigrant Juveniles (SIJs) Are Recognized as Permanently Residing Under Color of Law (PRUCOL) for Safety Net Assistance (SNA) Eligibility* (Aug. 18, 2021).[15] Delay in eligibility for such basic necessities "constitutes irreparable harm."

---

[14]    Available    at    https://www.sfhsa.org/services/health-food/calfresh/calfresh-immigrants-frequently-asked-questions.

[15] Available at https://otda.ny.gov/policy/gis/2021/21DC059.pdf.

*Moreno Galvez*, 492 F. Supp. 3d at 1181; *see also Roe v. Anderson*, 134 F.3d 1400, 1404 (9th Cir. 1998) ("Numerous cases have held that reductions in AFDC benefits, even reductions of a relatively small magnitude, impose irreparable harm." (quoting *Beno v. Shalala*, 30 F.3d 1057, 1063–64 n.10 (9th Cir. 1994))).

### C. Delayed adjudication causes irreparable harm by impeding release from detention.

USCIS's delay in adjudicating SIJ petitions can prolong a juvenile's time in immigration detention, resulting in "a loss of liberty that is . . . irreparable." *Moreno Galvez*, 492 F. Supp. 3d at 1181. Amici have collectively represented hundreds of juveniles seeking SIJ status, including many who were older than 18 and held in immigration detention. In seeking the release of their clients, Amici have found that a SIJ approval significantly improves their clients' prospects. *See, e.g., Diaz-Calderon v. Barr*, No. 2:20-cv-11235, 2020 WL 5645191, at *15 (E.D. Mich. Sept. 22, 2020) (holding that the Government had "no statutory authority to detain [the respondent]," in part because he was a Special Immigrant Juvenile and had therefore been "paroled into the United States for purposes of litigating [his] adjustment of status").

A SIJ beneficiary may move to terminate removal proceedings; if granted, this motion would lead to immediate release.[16] Similarly, a beneficiary may prevail in a motion to have removal proceedings administratively closed, *Avetisyan*, 25 I&N Dec. 688, which would also increase the chance of release. Even if proceedings continue, however, ICE is more likely to agree to release a detained juvenile if USCIS approves the juvenile's SIJ petition. Recent ICE Policy confirms this practice: "If USCIS approves a victim-based immigration benefit for a noncitizen detained in ICE custody, the noncitizen should be considered for release from detention so long as their release is not prohibited by law and no exceptional circumstances exist." ICE Directive 11005.3, § 5.6. Likewise, SIJ approval may help a juvenile make an initial or renewed application to the immigration court to be released on bond. 8 C.F.R. § 1003.19. This Court has long recognized that a deprivation of liberty constitutes irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

---

[16] *See* Trasviña Memo at 9 (advising attorneys responsible for prosecuting removal cases that the case of "a child who appears prima facie eligible to pursue special immigrant juvenile status" will generally "merit dismissal in the absence of serious aggravating factors").

## CONCLUSION

To avoid irreparable harm to SIJ beneficiaries, Amici respectfully ask this Court to affirm the District Court decision and uphold the injunction requiring Defendants to adjudicate SIJ petitions within 180 days.

Respectfully submitted,

September 20, 2021

*s/ Catherine Weiss*
Catherine Weiss
Tracy Buffer
Amanda K. Cipriano
Maxine Peskens
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Fax: (973) 597-2400
cweiss@lowenstein.com
tbuffer@lowenstein.com
acipriano@lowenstein.com
mpeskens@lowenstein.com
*Attorneys for Amici Curiae*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 20-36052

I am the attorney or self-represented party.

**This brief contains** | 6,114 **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of Fed. R. App. P.
   29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
   *(select only one)*:

   ○ it is a joint brief submitted by separately represented parties;

   ○ a party or parties are filing a single brief in response to multiple briefs; or

   ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [        ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Catherine Weiss    **Date** | Sep 20, 2021
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

Form 8                                                    *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused this Amicus Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

September 20, 2021             By:    *s/ Catherine Weiss*

                                           Catherine Weiss